## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

GREGORY DEAN MILLER,      )
                                 )

        **Plaintiff,**         )
                                 )

v.                               )        **CIVIL ACTION NO. 2:13-20516**
                                 )

CAROLYN W. COLVIN ,       )
**Acting Commissioner of Social Security,**  )
                                 )

        **Defendant.**        )

### PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. By Standing Order entered July 24, 2013 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). This case is presently pending before the Court on the parties cross-Motions for Judgment on the Pleadings (Document Nos. 14 and 15.) and Plaintiff's Response. (Document No. 18.) .

The Plaintiff, Gregory Dean Miller, (hereinafter referred to as "Claimant"), filed an application for SSI on September 7, 2010 (protective filing date), alleging disability as of December 1, 2003, due to schizoaffective disorder and right eye blindness. (Tr. at 15, 159-62, 223, 227.) The claim was denied initially and upon reconsideration. (Tr. at 56-57, 65-67, 73-75.) On February 9, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 76-78.) A hearing was held on March 26, 2012, before the Honorable Jack Penca. (Tr. at 26-54.)  By decision dated March 30, 2012, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 15-25.)

The ALJ's decision became the final decision of the Commissioner on June 12, 2013, when the Appeals Council denied Claimant's request for review. (Tr. at 1-5.) Claimant filed the present action seeking judicial review of the administrative decision on July 16, 2013, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2012). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2012). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a) and 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment. Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in 20 C.F.R. §§ 404.1520a(c) and 416.920a(c). Those sections provide as follows:

> *(c) Rating the degree of functional limitation.* (1)Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
>
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
>
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. See 12.00C of the Listings of Impairments.

(4) When we rate the degree of limitation in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace), we will use the following five-point scale: None, mild, moderate, marked, and extreme. When we rate the degree of limitation in the fourth functional area (episodes of decompensation), we will use the following four-point scale: None, one or two, three, four or more. The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" in the first three functional areas (activities of daily living, social functioning; and concentration, persistence, or pace) and "none" in the fourth (episodes of decompensation) will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1).[1] Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2) and 416.920a(d)(2). Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the

---

[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04, provides that affective disorders, including depression, will be deemed severe when (A) there is medically documented continuous or intermittent persistence of specified symptoms and (B) they result in two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; or repeated episodes of decompensation, each of extended duration or (C) there is a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities with symptoms currently attenuated by medication or psychosocial support and (1) repeated extended episodes of decompensation; (2) a residual disease process resulting in such marginal adjustment that a minimal increase in mental demands or change in the environment would cause decompensation; or (3) a current history of 1 or more years' inability to function outside a highly supportive living arrangement, and the indication of a continued need for such an arrangement.

Claimant's residual functional capacity. 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(d)(3). The Regulation further specifies how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision issued by the administrative law judge and the Appeals Council must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. §§ 404.1520a(e)(2) and 416.920a(e)(2).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since September 7, 2010, the application date. (Tr. at 17, Finding No. 1.) Under the second inquiry, the ALJ found that Claimant suffered from "right eye blindness, mood disorder not otherwise specified (NOS), personality disorder NOS, and polysubstance dependence and abuse," which were severe impairments. (Tr. at 17, Finding No. 2.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 17, Finding No. 3.) The ALJ then found that Claimant had a residual functional capacity ("RFC") to perform medium level work, as follows:

> [T]he [C]laimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can perform tasks requiring only occasional visual acuity and no depth perception. He can tolerate occasional changes in the work setting and occasional supervision. He can have occasional interaction with coworkers but no interaction with the public.

(Tr. at 19, Finding No. 4.) At step four, the ALJ found that Claimant had no past relevant work. (Tr. at 23, Finding No. 5.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a laundry

worker, dry cleaner helper, and laundry bagger at the unskilled medium level of exertion. (Tr. at 23-24, Finding No. 9.) On this basis, benefits were denied. (Tr. at 24, Finding No. 10.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on July 10, 1966, and was 46 years old at the time of the administrative hearing, March 26, 2012. (Tr. at 23, 159, ) Claimant had at least a high school education and was able to communicate in English. (Tr. at 23, 226, 227-28.) Claimant's past work did not constitute substantial gainful activity. (Tr. at 23, 47-48.)

The Medical Record

The Court has reviewed all the evidence of record, including the medical evidence of record,

and will discuss it below as it relates to the undersigned's findings and recommendation.

*Kay Collins-Ballina, M.A. - Mental Status Examination*:

On September 20, 2010, Ms. Collins-Ballina, conducted a mental status evaluation of Claimant at the request of the state agency to determine eligibility for disability benefits. (Tr. at 740-45.) Claimant reported that he began hearing voices in 1995. (Tr. at 741.) He reported an "up and down" mood for the past two weeks, high activity level, that he often did impulsive things such as fighting last week, difficulty falling asleep and screaming in his sleep, crying episodes, and diminished interests in activities that once were pleasurable. (Id.) Claimant reported that he had never received any psychotherapy or psychiatric treatment. (Tr. at 741-42.) His daily activities included watching television, walking, riding his bike, and caring for his own personal hygiene needs. (Tr. at 743.) Claimant reported that he did not like to be around a lot of other people. (Id.)

On mental status exam, Ms. Collins-Ballina noted that Claimant was oriented, had an anxious and angry mood, had a labile affect, spoke coherently, had relevant but rambling speech, presented with coherent and circumstantial thought processes, had no evidence of hallucinations, had agitated psychomotor behavior, had mildly deficient insight and remote memory, had normal judgment and immediate and delayed memory, and had mildly deficient attention and concentration. (Tr. at 743-44.) Claimant was diagnosed with polysubstance Dependence, Mood Disorder NOS, and Personality Disorder NOS. (Tr. at 744.) She opined that his prognosis with treatment and intervention was fair and that his persistence and pace were mildly deficient. (Id.)

*Kip Beard, M.D.*:

Dr. Beard examined Claimant on September 23, 2010, for a complaint of blindness in the right eye. (Tr. at 746-51.) Claimant reported that he was poked in the right eye in 1994, when playing basketball. (Tr. at 746l.) On exam, Dr. Beard observed a scar of the right cornea that covered

about half of the cornea over the pupil and extended to the lateral aspect of the cornea. (Tr. at 748.) He noted that the pupil indicated some initial clouding of the lens, which could have represented early stages of a cataract. (Id.) He observed that visual acuity was greater than 20/200 in the right eye and 20/20 in the left eye without corrective lenses. (Id.) Dr. Beard diagnosed right corneal abrasion with subsequent corneal scar development with secondary decreased visual acuity. (Tr. at 749.) He opined that there would not be much improved correction with prescription lenses. (Id.)

*Rabah Boukhemis, M.D. - Physical RFC Assessment*:

On October 25, 2010, Dr. Boukhemis, a state agency physician, completed a form Physical RFC Assessment, on which he did not assess any limitations, noting that although Claimant was blind in one eye, his left eye was within normal limits. (Tr. at 752-60.) Dr. Boukhemis noted that Dr. Beard failed to offer any evidence as to the severity of Claimant's right eye blindness in his evaluation report. (Tr. at 759.) Dr. Uma Reddy, M.D., affirmed Dr. Boukhemis' opinion as written on January 25, 2011. (Tr. at 798.)

*Jeff Boggess, Ph.D. - Psychiatric Review Technique*:

On November 3, 2010, Dr. Boggess opined that Claimant's mood disorder NOS and personality disorder NOS were not severe impairments. (Tr. at 761-75.) He opined that Claimant had mild restrictions in activities of daily living; no difficulties in maintaining social functioning; mild difficulties in maintaining concentration persistence, or pace; and no episodes of decompensation each of extended duration. (Tr. at 771.)

*Highland Assessment Center/Hospital*:

Claimant received treatment at Highland Assessment Center/Hospital in November, 2010, for his behavior towards his girlfriend and friend. (Tr. at 776-82.) On November 13, 2010, Claimant's affect was flat, slightly depressed, and agitated at times. (Tr. at 776.) Claimant denied

8

suicidal ideation, but had expressed some homicidal ideation toward a friend. (Tr. at 776-77.) He was diagnosed on November 14, 2010, with bipolar disorder NOS, Alcohol and Drug Dependence, and assessed a GAF of 45. (Tr. at 782.)

_Prestera Center, Inc._:

Claimant initially was evaluated by Dr. Victor Nease, M.D., on December 1, 2010. (Tr. at 801-04.) Claimant was transferred to Prestera from Highland Hospital after a three-day admission for having been homicidal. (Tr. at 801.) Claimant was angry with a friend for having turned him in for battery of a police officer. (Id.) Dr. Nease noted that Claimant was diagnosed with schizoaffective disorder but was not compliant with medication or treatment. (Id.) He had used drugs and alcohol since the age of eleven, including crack and cocaine. (Id.) He noted problems with mood instability, racing thoughts, marked impulsivity, problems with aggression, frequent moves, hypersexuality, and problems with money. (Id.) On mental status exam, Dr. Nease noted that Claimant was appropriate and alert, maintained appropriate eye contact, was cooperative, and agitated and hyperactive, had pressured speech and labile affect, denied suicidal or homicidal ideation, had tactile hallucinations, and his thought processes were logical. (Tr. at 801-02.) He assessed schizoaffective disorder, bipolar type; alcohol dependence; cocaine abuse; and personality disorder NOS. (Tr. at 802-03.) Dr. Nease assessed a GAF of 50. (Tr. at 803.)

On December 21, 2010, it was noted that Claimant had completed a short-term program at Riverside and was living at the men's shelter. (Tr. at 805.) Claimant had been compliant with his medication, remained sober, had a good mood, had some anxiety, and racing thoughts remained a problem. (Tr. at 805.) His GAF remained at 50, despite some improvement. (Tr. at 807.)

Dr. Nease noted a month later on January 19, 2011, that Claimant remained sober and he reported that he was doing well with only mild craving. (Tr. at 821.) His mood was fair, though he

continued to have racing thoughts and irritability. (Id.) Claimant's GAF score improved to 65. (Tr. at 823.) One week later, however, Claimant reported on January 26, 2011, that he had been denied disability and that his attorney told him that he needed "as many letters as he can get" for an appeal. (Tr. at 825.) Claimant had no specific complaints and Dr. Nease noted that his mood and psychosis were minimal. (Id.) Nevertheless, on mental status exam, Dr. Nease noted that Claimant presented with rapid speech, deficient coping ability skills, had a labile affect, and was hyperactive. (Tr. at 825-26.) The exam essentially was normal in all other respects. (Id.) Dr. Nease continued his GAF score of 65. (Tr. at 827.)

   *Cindy Thompson, RSLWC*:

   On February 8, 2011, Cindy Thompson, RSLWC, Claimant's counselor, of Roark-Sullivan Lifeway Center, Inc., prepared a memorandum regarding Claimant's condition. (Tr. at 800.) She indicated that Claimant began going to the Veteran's Service Center in January, 2009, and had been in and out of jail. (Id.) She indicated that he self-medicated with drugs and alcohol to treat his underlying mental health issues. (Id.) She stated:

> Greg will present very manic in his behavior, this is when he will get involved in criminal activity and abuse substances the most. Then he will be depressed which also leads him to use to make himself feel better. It is whirlwind effect with Greg. He will have periods that he can get a job however it is only a matter of time till he is losing the employment due to missing work when he is either manic and/or depressed.

(Id.) She noted that Claimant needed to address mental health and addiction issues. (Id.)

   *Dr. Nease's RFC Assessment*:

   On February 24, 2011, Dr. Nease completed a form Mental Impairment Questionnaire (RFC & Listings), on which he indicated that Claimant treated with mood stabilizers, antipsychotics, and therapy. (Tr. at 861-66.) He opined that when Claimant was not using drugs and alcohol, and was taking his medication, his symptoms were improved. (Tr. at 862.) He concluded that Claimant's

impairments or treatment would cause him to be absent from work more than three times a month. (Id.) Dr. Nease indicated that Claimant had marked or extreme limitations in fifteen out of twenty psychological functional categories. (Tr. at 864-66.) He concluded that Claimant's mental impairments were chronic and equally debilitating. (Tr. at 866.)

*Primecare Medical/PSIMED Corrections, LLC*:

While incarcerated, Claimant underwent a mental evaluation by Anita F. Petitte, PA-C, on July 21, 2011. (Tr. at 1146.) Claimant reported that he had taken medications for schizoaffective disorder for one year with some benefit. (Tr. at 1146.) Ms. Petitte noted on mental status exam that he had a broad affect and neutral mood and was oriented. (Id.) She diagnosed schizoaffective disorder, personality disorder NOS, and assessed a GAF of 70. (Id.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in summarily rejecting the opinion of Dr. Nease, Claimant's treating psychiatrist. (Document No. 14 at 11-15.) Claimant asserts that the ALJ gave "some weight" to the statements from Ms. Thompson which essentially are consistent with the opinions of Dr. Nease. (Id. at 12-13.) Claimant contends that Ms. Thompson opined that Claimant self-medicated with substance abuse and that his mania produced criminal behavior and drug use. (Id. at 12.) In turn, she noted that he would have periods in which he would get a job, but would lose it due to his mania or depression because his mental health issues would become uncontrollable and that his issues would be a lifelong battle for him. (Id. at 12-13.) Claimant contends that these opinions are consistent with Dr. Nease's opinion of disability. (Id. at 13.) He further contends that the opinions are bolstered by the fact that Claimant was incarcerated at the time of the hearing as a result of physical aggression. (Id.) Claimant further argues that it appears that the ALJ has rejected all the opinion evidence of

record and therefore, his RFC assessment is unsupported. (Id. at 13-15.)

In response, the Commissioner asserts that substantial evidence supports the ALJ's determination that Dr. Nease's opinion was entitled to no weight because it was unsupported by his own treatment notes and was inconsistent with the medical records. (Document No. 15 at 6-9.) The Commissioner first notes that Dr. Nease's treatment notes demonstrate that when Claimant was compliant with medications, his symptoms improved, and his subsequent treatment notes indicated that he was doing well. (Id. at 7-8.) His GAF score was indicative of only mild symptoms. (Id. at 8.) The Commissioner next notes that the other mental health findings were consistent with the ALJ's findings that Claimant did not have a disabling mental health impairment. (Id.) The Commissioner notes that Claimant never received psychotherapy or psychiatric treatment, his last hospitalization was seven years prior to the date he filed for disability, he was cooperative, he maintained activities, and his attention and concentration were only mildly deficient. (Id.) This evidence, combined with Dr. Nease's treatment notes, support the ALJ's finding of non-severe mental impairments. (Id.) Accordingly, the Commissioner asserts that the ALJ's decision is supported by the substantial evidence of record. (Id.) Claimant reiterates his arguments in his Reply. (Document No. 18 at 1-4.)

Next, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to consider whether his schizoaffective disorder and bipolar disorder were severe impairments. (Document No. 14 at 15-17.) Claimant asserts that the ALJ arbitrarily adopted the diagnosis of mood disorder NOS as assessed by Ms. Collins-Ballina and failed to find that his schizoaffective disorder and bipolar disorder were severe impairments. (Id.) Claimant notes that he was diagnosed repeatedly with schizoaffective disorder by multiple treating mental health providers, but asserts that the ALJ neglected to determine whether or not it was a

severe impairment. (Id. at 15-16.) He asserts that a mood disorder NOS is a much more benign impairment than either a schizoaffective or bipolar disorder. (Id. at 16.) Claimant also contends that the ALJ failed to apply 20 C.F.R. 416.920a(c), in determining whether he had a severe impairment. (Id. at 17-20.)

In response, the Commissioner asserts that the ALJ reasonably considered all of Claimant's symptoms and alleged underlying mental impairments that could reasonably be expected to produce his symptoms. (Document No. 15 at 9-11.) Claimant notes that in assessing the evidence of record, the ALJ specifically included a diagnosis of bipolar and schizoaffective disorders. (Id. at 9.) The Commissioner asserts that the ALJ also properly applied 20 C.F.R. 416.920a(c). (Id. at 10.) He asserts that the ALJ properly considered the degree of functional limitations as assessed by Drs. Boggess and Bortner, and concluded that Claimant had moderate limitations in activities of daily living, social functioning, concentration, persistence, and pace. (Id. at 10-11.)

In reply, Claimant asserts that the fact that the ALJ named the diagnoses in his opinion did not relieve him from the responsibility of determining whether the impairments were severe. (Document No. 18 at 4-5.) Claimant contends that the ALJ failed to make any positive findings respecting the 416.920a(c) categories, as they were non-existent in the ALJ's opinion. (Id. at 5.)

Finally, Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ erred in properly evaluating Claimant's credibility. (Document No. 14 at 20-26.) Claimant asserts that the ALJ ignored many of the factors set forth in the Regulations in finding him incredible and instead relied on only the facts that medications improved his condition, he worked sporadically, and he was able to provide for his activities of daily living and was able to interact some with others. (Id. at 21.) Claimant asserts that his activities were minimal, his social functioning was poor and that he did not like even being around people. (Id. at 22.) Although he

improved, Claimant asserts that such improvements were short-lived. (Id. at 23.) He notes that although he improved in December, 2010, his GAF remained at 50. (Id.) Other than when he was incarcerated his only improvement in GAF was in January, 2011, when it improved to 65. (Id.) Claimant further asserts that the ALJ improperly relied on his dysfunctional employment history prior to his alleged onset date to question whether his continuing unemployment was due actually to his medical impairments. (Id. at 25-26.) Claimant contends that his dysfunctional employment was due to his mental impairments. (Id.) He, therefore, contends that the ALJ's credibility analysis is not supported by the record. (Id.)

In response, the Commissioner asserts that the ALJ reasonably determined that Claimant had moderate limitations resulting from his impairments. (Document No. 15 at 12.) Additionally, the Commissioner asserts that Claimant's condition improved with medication and treatment. (Id.) Accordingly, the Commissioner asserts that the ALJ properly found that Claimant was not fully credible. (Id.)

Analysis.

1. Opinion Evidence.

Claimant first alleges that the ALJ erred in assessing the opinion of his treating psychiatrist, Dr. Nease. (Document No. 14 at 11-15.)  Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2012). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). The

opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2012). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

In his decision, the ALJ failed to accord any weight to the opinion of Dr. Nease because his opinion was unsupported by his treatment record and was inconsistent with the medical record of evidence. (Tr. at 22.) The ALJ also noted that his opinion was rendered after only one appointment. (Id.) The ALJ gave little weight to the opinions of Dr. Boggess and Dr. Bickham because they did not have the benefit of reviewing subsequent evidence in evaluating Claimant. (Tr. at 23.) Finally, the ALJ accorded the opinion and statements of Ms. Thompson some weight as it generally was consistent with the medical record of evidence. (Id.) Claimant first takes issue with the ALJ's failure to accord greater weight to Dr. Nease's opinion. He then takes issue with the ALJ's assignment of weight to the various opinions and asserts that essentially he gave no weight to any opinion, and therefore, his RFC assessment is unsupported..

First, regarding Dr. Nease, the undersigned finds that the ALJ's decision to accord his opinion no weight is supported by the substantial evidence of record. As the ALJ found, Dr. Nease's opinion was inconsistent with his treatment notes. Dr. Nease first examined Claimant on December

1, 2010, at which time Claimant reported poor medication compliance . (Tr. at 801.) Nevertheless, he was agitated but cooperative, and Dr. Nease assessed a GAF of 50, indicative of only moderate symptoms. (Tr. at 801-03.) One week later, Claimant reported that he was compliant with his medication, remained sober, and had a good mood. (Tr. at 805.) His GAF remained at 50. (Tr. at 807.) One month later, Claimant reported that he was doing well and was living with his sister and remained sober. (Tr. at 821.) Dr. Nease assessed a GAF of 65, indicative of only mild symptoms. (Tr. at 823.) One week later, even after having been denied disability benefits, Dr. Nease noted that Claimant's mood was better and he continued to assess his GAF at 65. (Tr. at 825.) Thus, Dr. Nease's extreme and marked limitations of disability contradict his rather benign findings in his treatment notes.

Furthermore, the ALJ found that Claimant's medications were effective in controlling his symptoms when he was compliant with his medications. (Tr. at 21.) Claimant reported to Ms. Collins-Ballina that he watched television, walked and rode his bike and was able to care for his own personal hygiene needs. (Tr. at 20.) Ms. Collins-Ballina assessed mildly deficient attention, concentration, persistence, and pace. (Tr. at 20-21.) Nevertheless, primarily based on the forms Claimant completed in connection with his application for disability, the ALJ determined that Claimant's ability to maintain activities of daily living, social functioning, concentration, persistence, and pace was moderately deficient. (Tr. at 18.)

The state agency physicians' assessments were more restrictive than the ALJ's RFC assessment. Nevertheless, because they did not have the benefit of subsequent medical evidence, the ALJ accorded their opinions little weight. Furthermore, he accorded the opinion of Ms. Thompson some weight as it was generally consistent with the evidence of record. Despite Claimant's

contention to the contrary, Ms. Thompson's opinion is not one entirely of disability. She stated that he lost employment due to missing work when he was either manic or depressed. This statement coincides with Dr. Nease's treatment notes that Claimant's symptoms were controlled when he was maintained on medication. Though she states that his mental health issues will be a lifelong battle, that did not mean that he would be disabled necessarily; only that he may need to continue medication for life. As the ALJ noted Ms. Thompson's statements were consistent with Dr. Nease's treatment notes. To that extent, he accorded her statements and opinions some weight, which was more weight than he gave Dr. Nease's opinion because it conflicted with his own treatment notes. There is no evidence to support that Claimant's mental impairments were severe, as they improved when treated with medication and his last GAF assessments were indicative of only mild symptoms. Accordingly, the undersigned finds that the ALJ's decision as to the weight to the opinion evidence is supported by the substantial evidence of record.

2. <u>Severe Impairments</u>.

Claimant next alleges that the ALJ erred in failing to determine that his schizoaffective and bipolar disorders were severe impairments and in failing to apply 20 C.F.R. 416.920a(c). (Document No. 14 at 14-20.) To be deemed disabled, a claimant must have an impairment or combination of impairments which is severe, meaning that it "significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 416.920(c) (2012). Basic work activities are the abilities and aptitudes necessary to do most jobs, including: physical functions such as sitting and standing; capacities for seeing, hearing and speaking; understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. <u>Id.</u>; §§ 404.1521(b)(1)-(6);

416.921(b)(1)-(6). Conversely, "[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original); see also SSR 85-28 (An impairment is considered not severe "when medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."). An inconsistency between a claimant's allegations about the severity of an impairment and the treatment sought is probative of credibility. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). As discussed above, the determination whether a claimant has a severe impairment is made at the second step of the sequential analysis.

In his decision, the ALJ determined that Claimant's mood disorder NOS, personality disorder NOS, and polysubstance dependence and abuse were severe impairments. (Tr. at 17.) The ALJ did not identify Claimant's schizoaffective and bipolar disorders in the paragraph following this finding, in which he notes that additional impairments were non-severe. (Id.) Nevertheless, the ALJ specifically noted the impairments in his summary of the evidence. (Tr. at 19-23.) As the Commissioner argues, however, the medical evidence supported only diagnoses and not a finding of severe impairments as the ALJ found. As discussed and summarized above, the evidence demonstrates that Claimant's symptoms were controlled when he maintained his medications. The mental status exams failed to reveal any significant findings relating to these two mental impairments. Claimant continued to remain sober. Additionally, although the ALJ gave their opinions only little weight, the state agency physicians opined that Claimant did not have any severe

mental impairments, and no other medical source opined that the impairments were severe. Accordingly, the undersigned finds that the ALJ's decision at step two of the sequential analysis is supported by the substantial evidence of record.

Regarding the ALJ's rating of degree of functional limitation, pursuant to 20 C.F.R. 416.920a(c), the undersigned notes that the ALJ assessed moderate limitations in activities of daily living, social functioning, concentration, persistence, and pace, and no episodes of decompensation each of extended duration. (Tr. at 18.) In reaching this decision, the ALJ relied on Claimant's form Function Report, dated September 16, 2010, which was completed in connection with his application for benefits. (Tr. at 242-49.) On this report, Claimant indicated that he lived in an apartment with friends and was unable to work any length of time. (Tr. at 242.) He indicated that he watched television, was unable to bathe daily, shaved every few days, forgot to do certain things and needed people to tell him to do things, and was able to do laundry. (Tr. at 243-44.) He reported that he walked and rode a bicycle and did not drive because he did not have a license. (Tr. at 245.) He indicated that he shopped twice a week for food and clothes, was able to pay bills and count change, was able to handle a savings account, and could use a checkbook and money orders. (Id.) He stated that he did not like to be around people much and that he failed to go out as much as he used to. (Tr. at 247.) Additionally, the ALJ noted Claimant's reports to Ms. Collins-Ballina that he watched television, walked, and rode his bike. (Tr. at 20.) The ALJ also noted the assessment of Dr. Boggess, who assessed only mild limitations in activities of daily living, concentration, persistence, and pace; and no limitation in social functioning. (Tr. at 23.) The ALJ, however, gave Dr. Boggess' opinion little weight as he did not consider subsequent evidence, and the ALJ rendered a more restrictive assessment. (Tr. at 18.) The ALJ properly considered each functional area and assigned a degree of

20

limitation based on his assessment of the evidence. Claimant is asking the Court to re-weigh the evidence and assign a different degree of limitation, which this Court is constrained to do. The ALJ noted the proper Regulations, he summarized the evidence of record, he identified the particular activities that support each functional area, and assigned a limitation. The ALJ's findings are supported by substantial evidence and for the Court to render a more restrictive assessment would equate to re-weighing the evidence, which it is prohibited from doing. Accordingly, the Court finds that the ALJ's decision is supported by substantial evidence.

3. Pain and Credibility.

Finally, Claimant alleges that the ALJ erred in assessing his credibility. (Document No. 14 at 20-26.) A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2012); SSR 96-7p; See also, Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." Mickles v. Shalala, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. Hyatt v. Sullivan, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4)

(2012).  Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons.  . . .  Factors relevant to your symptoms, such as pain, which we will consider include:
>
> > (i) Your daily activities;
>
> > (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>
> > (iii) Precipitating and aggravating factors;
>
> > (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> > (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>
> > (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>
> > (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2012).

> SSR 96-7p repeats the two-step regulatory provisions:

> > First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.

> > Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of

the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities.  For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations.  A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects

23

allegations of pain <u>solely</u> because the pain itself is not supported by objective medical evidence.

The ALJ noted the requirements of the applicable law and Regulations with regard to assessing pain, symptoms, and credibility. (Tr. at 19-20.) The ALJ found at the first step of the analysis that Claimant's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." (Tr. at 20.) Thus, the ALJ made an adequate threshold finding and proceeded to consider the intensity and persistence of Claimant's alleged symptoms and the extent to which they affected Claimant's ability to work. (Tr. at 20-23.) At the second step of the analysis, the ALJ concluded that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible. The above residual functional capacity assessment contains all limitations reasonably supported by the [C]laimant's credible testimony concerning the intensity, persistence, and limiting effects of his symptoms and by the objective medical evidence in the record." (Tr. at 20.)

The ALJ first considered Claimant's subjective symptoms in assessing his credibility. (Tr. at 19-20.) Claimant testified that he had schizoaffective disorder and that it was difficult for him to be around other many people because it made him paranoid. (Tr. at 19.) Claimant reported auditory and visual hallucinations and acknowledged homicidal thoughts. (<u>Id.</u>) The ALJ acknowledged that Claimant was in jail due to domestic assault. (Tr. at 20.) Claimant reported that he angered a lot and heard voices in his head. (<u>Id.</u>) He left his last job due to an inability to cope and he reported an unstable home life for five to six years. (<u>Id.</u>) He described his substance abuse history and reported as to his current medications. (<u>Id.</u>) Claimant reported mood swings, anger problems, and paranoia. (<u>Id.</u>) He also had racing and bad thoughts, an inability to focus, and a desire to stay in his room. (<u>Id.</u>)

As discussed above, the ALJ considered Claimant's activities of daily living. (Tr. at 18, 20-22.) He acknowledged that Claimant treated with medication, which controlled his symptoms when he was complaint. (Tr. at 20-23.) Respecting the other factors set forth in the Regulations, the ALJ

24

acknowledged Claimant's impairments, his symptoms, and the resulting limitations. He summarized the frequency of his symptoms, and that the symptoms were worse when around others. Accordingly, the undersigned finds that contrary to Claimant's allegations, the ALJ properly considered the factors set forth in the Regulations in considering Claimant's credibility. Claimant takes issue with the ALJ's assessment of his employment issue. The ALJ noted that Claimant worked only sporadically prior to his alleged onset date, "which raises a question as to whether the [C]laimant's continuing unemployment is actually due to medical impairments." (Tr. at 21.) The undersigned notes that the ALJ did not make a finding in this respect, but simply questioned Claimant's unemployment. The undersigned further notes that the ALJ's statement followed his statement that Claimant's symptoms were controlled when he took his medications. It is reasonable to conclude that the ALJ meant if Claimant could control his symptoms and be productive on medications, then maybe Claimant was not being compliant with medications and therefore being unproductive for some other reason. Nevertheless, the undersigned finds that the ALJ's finding regarding Claimant's employment or unemployment does not refute the fact that he properly considered Claimant's credibility pursuant to the Regulations. Accordingly, the undersigned finds that the ALJ's decision is supported by substantial evidence.

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 14.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 15.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**,

and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: September 2, 2014.

R. Clarke VanDervort
United States Magistrate Judge

26