IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

GREGORY DEAN MILLER,

           Plaintiff,

v.                                              CIVIL ACTION NO.   2:13-cv-20516

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.

**MEMORANDUM OPINION AND ORDER**

      Before the Court is Plaintiff Gregory Miller's Complaint [ECF 2] seeking review of the final decision of the Commissioner of Social Security ("Commissioner"). By standing order entered July 24, 2013, and filed in this case on August 24, 2013, this action was referred to United States Magistrate Judge R. Clarke VanDervort for submission of proposed findings and a recommendation for disposition ("PF&R"). On September 2, 2014, Magistrate Judge VanDervort entered his PF&R, which recommended that this Court affirm the final decision of the Commissioner and dismiss this matter from the Court's docket. (ECF 19.) On September 10, 2014, Plaintiff filed timely objections to the PF&R (ECF 20).

      For the reasons that follow, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the PF&R to the extent it is not inconsistent with this Opinion, and **AFFIRMS** the final decision of the Commissioner.

*I. PROCEDURAL BACKGROUND*

The facts concerning this matter are more fully set forth in the PF&R, and need not be repeated here at length. In short, Plaintiff filed an application for disability insurance benefits on September 7, 2010. (ECF 9-2 at 15.) Plaintiff alleged disability due to schizoaffective disorder and right eye blindness. (ECF 9-7 at 40.) The application was denied initially and upon reconsideration. (ECF 9-4 at 9–19.)

A hearing was held by video before Administrative Law Judge ("ALJ") Jack Penca on March 26, 2012. (ECF 9-2 at 27–55.) On March 30, 2012, the ALJ issued an unfavorable decision, finding at step three of the sequential disability analysis that Plaintiff's impairments did not meet or equal the level of severity of any listing in Appendix 1 and at step four that the impairments did not prevent Plaintiff from performing such jobs as laundry worker, dry cleaner helper, and laundry bagger. (*Id.* at 13–26.) The Appeals Council denied review of the ALJ's decision on June 12, 2013. (ECF 9-2 at 2–6.) Thereafter, on July 16, 2013, Plaintiff filed his Complaint in this Court. (ECF 2.)

*II. STANDARD OF REVIEW*

The Court is not required to review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn*, 474 U.S. 140, 150 (1985). Failure to file timely objections constitutes a waiver of de novo review and the Petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *see also Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir. 1984). In addition, this Court need not conduct a de novo review when a party "makes general and conclusory objections that do not

2

direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

### III. DISCUSSION

The Court will now review de novo those parts of the PF&R to which Plaintiff has made a proper objection. For the reasons that follow, the Court **OVERRULES** Plaintiff's objections.

Judicial review of a final decision regarding disability benefits is limited to determining whether the findings are supported by substantial evidence and whether the correct law was applied. *See* 42 U.S.C. § 405(g) ("The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) ("A factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law."). Substantial evidence requires more than a scintilla, but less than a preponderance, of the evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, (1938). "In reviewing for substantial evidence, [the court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the Commissioner's decision. *Id.* (citing *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)).

Assuming error by the Commissioner, "reversal is not required where the alleged error 'clearly had no bearing on the procedure used or the substance of the decision reached'" by the ALJ. *Ngarurih v. Ashcroft*, 371 F.3d 182, 190 n.8 (4th Cir. 2004). "[T]he burden of showing that

3

an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Plaintiff bears the burden of proving to the Commissioner that she is disabled within the meaning of the Social Security Act. 42 U.S.C. § 423(d)(5); *English v. Shalala*, 10 F.3d 1080, 1082 (4th Cir. 1993). The Commissioner uses a five-step process to evaluate a disability claim.[1] *See* 20 C.F.R. §§ 404.1520(a), 416.920(a)(4). The claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If a decision regarding disability can be made at any step of the process, however, the inquiry ceases. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

*A. Objection to Opinion Evidence: The "Good Reasons" Requirement*

Plaintiff first argues that the ALJ erred in rejecting the opinion evidence of Miller's treating psychiatrist, Victor Nease, M.D.

According to the Social Security Regulations, the ALJ "will" give a treating source's medical opinion controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). If not entitled to controlling weight, the value of the opinion must be weighed and the ALJ must consider: (1) the length of treatment of the claimant by the treating source; (2) the frequency of examination by the treating

---

[1] "Under the process the ALJ must determine in sequence: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether he has a severe impairment; (3) if so, whether that impairment meets or equals the medical criteria of Appendix 1 which warrants a finding of disability without considering vocational factors; and (4) if not, whether the impairment prevents him from performing his past relevant work. By satisfying either step 3 or 4, the claimant establishes a prima facie case of disability. The burden then shifts to the Secretary and leads to the fifth and final inquiry in the sequence: whether the claimant is able to perform other work considering both his remaining physical and mental capacities (defined as residual functional capacity) and his vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981).

source; (3) the nature and extent of the treatment relationship; (4) the support of the treating source's opinion afforded by the medical evidence of record; (5) the consistency of the opinion with the record as a whole; and (6) the specialization of the treating source. 20 C.F.R. §§ 404.1527(c), 416.927(c). The ALJ must give "good reasons" for the weight given to the treating source's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Here, the ALJ applied the correct law because he provided "good reasons" for according Dr. Nease's opinion no weight. The ALJ stated that "I accord no weight to Dr. Nease's opinion, as it is unsupported by his treatment record and is inconsistent with the medical record of evidence. It is further noted, Dr. Nease completed the form after only one appointment." (ECF 9-2 at 23.) Thus, the ALJ: (1) found that the opinion was inconsistent with other substantial evidence in the case record; and (2) considered at least five of the six pertinent factors with respect to Dr. Nease's opinion evidence. The first three of the factors are addressed in the ALJ's finding that Dr. Nease completed the form after only one appointment. The fourth and fifth factors are addressed in the ALJ's finding that Dr. Nease's opinion is unsupported by his own treatment record and is inconsistent with the medical record. While the ALJ's opinion does not explicitly reference the sixth factor, the treating source's specialization, the ALJ was clearly aware of Dr. Nease's specialization. The ALJ's ruling cites the exhibit containing the medical impairment questionnaire (*id.*), which identifies Dr. Nease as a psychiatrist (ECF 9-20 at 67). Thus, the ALJ correctly applied the governing legal standards when determining not to assign any weight to Dr. Nease's opinion.

Substantial evidence also supports the ALJ's findings. The record indicates that Plaintiff had a total of four meetings with Dr. Neese over a nine-week period: one psychiatric evaluation

5

and three brief follow-up meetings regarding Plaintiff's medications. Dr. Nease's medical impairment questionnaire responds to the prompt "Frequency and length of contact:" with "1st visit 12/1/10". (ECF 9-20 at 62.) The medical record shows that Dr. Nease performed an hour-long psychiatric evaluation of Plaintiff on December 1, 2010 (ECF 9-20 at 2–5) and thereafter performed three fifteen-minute "individual medication management" sessions on December 21, 2010 (*id.* at 6–9), January 19, 2011 (*id.* at 22–25), and January 26, 2011 (*id.* at 26–29). Thus, although the record indicates more than one appointment, there is substantial evidence that the length of the treatment, frequency of examinations, and extent of treatment relationship between Dr. Nease and Plaintiff were all limited.

The ALJ's determination that Dr. Nease's opinion was inconsistent with his treatment notes and with the medical records is also supported by substantial evidence. In the medical impairment questionnaire filled out on February 24, 2011, Dr. Nease opined that there were extreme and marked limitations in Plaintiff's ability, *inter alia*, to sustain concentration and carry out detailed instructions, to work with others, to maintain regular attendance, to complete a normal workday and workweek without interruptions, to accept instructions and respond appropriately to criticism from supervisors, and to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. (ECF 9-20 at 65–67.) When Dr. Nease first examined Plaintiff on December 1, 2010, Plaintiff reported poor compliance with medications. (*Id.* at 2.) On December 21, 2010, Plaintiff reported that he was compliant with his medications and that his symptoms had improved. (*Id.* at 6.) Plaintiff again reported that he was compliant with his medications on January 19, 2011, and on January 26, 2011. (*Id.* at 22, 26.) On the latter date, Dr. Nease noted that Plaintiff's mood was better and "psychosis is minimal/at baseline."

(*Id.* at 26.) Notably, whereas during the first two sessions Dr. Nease assigned Plaintiff a Global Assessment of Functioning score of 50 (*id.* at 4, 8), during the following two sessions Dr. Nease assigned a score of 65 (indicative of only mild symptoms) (*id.* at 24, 28). The medical impairment questionnaire filled out by Dr. Nease also indicates that "When not using drugs + alcohol + taking medication [Plaintiff's] symptoms are improved." Thus, there is more than a scintilla of evidence of a contradiction between Dr. Nease's opinion about Plaintiff's extreme and marked limitations of disability with the more benign findings in Dr. Nease's treatment notes and his indications that Plaintiff was responding well to treatment. There is further evidence in the medical record that Plaintiff was responding well to treatment. On July 22, 2011, a mental health intake report for Primecare Medical/PSIMED Corrections, LLC, assigned Plaintiff a Global Assessment of Functioning score of 70 (indicative of only mild symptoms). (ECF 9-26 at 67.) The report noted that Plaintiff reported taking his medications for one year with some benefit. (*Id.*)

Plaintiff argues that it was error to take into account the fact that Plaintiff's symptoms improved when compliant with his medicine, because Plaintiff was diagnosed with disorders whose symptoms include non-compliance. (ECF 20 at 1.) Plaintiff cites three cases for the proposition that one of the symptoms of Plaintiff's disorders is non-compliance with medicine: *Donna Pate-Fires Astrue*, 564 F.3d 935 (8th Cir. 2009); *Scott v. Astrue*, 647 F.3d 734 (7th Cir. 2011); *Martinez v. Astrue*, 630 F.3d 693 (7th Cir. 2011). While those cases do contain some discussion of this issue in the context of other claimants and records, they are not pertinent to the ALJ's ruling in this case on this record. Moreover, law is not medicine.

7

Plaintiff has not pointed anywhere in the administrative record of this case where this particular issue is explicitly raised, either as a diagnosed symptom or as a legal argument. The record does contain some indications that Plaintiff was at times non-compliant, but it also contains indications that he was compliant for long stretches of time, during which time his symptoms improved. The Court's duty in this case is not to weigh the evidence in the record but to determine whether there is substantial evidence for the ALJ's findings, and there is.

Plaintiff also argues that the ALJ erred in giving "some weight" to Plaintiff's "treating therapist, Andy Thompson." (ECF 20 at 1.) However, the ALJ's opinion makes no mention of an Andy Thompson. To the extent that Plaintiff intended to refer to Cindy Thompson, to whose opinion evidence the ALJ did give "some weight" (ECF 9-2 at 24), there is no indication in the record that she was a treating therapist. Plaintiff in his briefs refers to Cindy Thompson as Plaintiff's "counselor." (ECF 14 at 9.) On the other hand, the ALJ refers to Cindy Thompson's opinion as a "lay opinion." (ECF 9-2 at 24.) On February 8, 2011, Cindy Thompson submitted a one-page letter on Roark-Sullivan Lifeway Center, Inc., letterhead. (ECF 19-9 at 41.) She indicated that Plaintiff began coming to the Veteran's Service Center in January of 2009. (*Id.*) From the list of addresses on the letterhead, the Veteran's Service Center appears to be one of the offices of Roark-Sullivan Lifeway Center, Inc. In her letter, Cindy Thompson did not identify her profession or her relationship to Plaintiff. Underneath her signature there is no title, only the acronym RSLWC and then an address. RSLWC is apparently merely an acronym for Roark-Sullivan Lifeway Center, and it does not appear from the substance of her letter that Cindy Thompson is a medical professional. Because it does not appear that Cindy Thompson was an "acceptable medical source", much less that she was a "treating source", the ALJ was not

8

required by § 20 C.F.R. § 404.1527 to give "good reasons" why he accorded her opinion "some weight." *See* § 20 C.F.R. § 404.1527(c)(2) & 416.927(a)(2) (the "good reasons" procedural requirement applies to decisions to give non-controlling weight to medical opinions by a claimant's treating source); § 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians and psychologists or other acceptable medical sources . . . ."); SSR 06-03P ("acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists).

To the extent that Cindy Thompson is a medical source but not an "acceptable medical source," SSR 06-03P clarifies that "[g]iving more weight to the opinion from a medical source who is not an 'acceptable medical source' than to the opinion from a treating source does not conflict with the treating source rules . . . ."

To the extent that Cindy Thompson is a non-medical source who has seen the Plaintiff in her professional capacity, SSR 06-03P requires that "when an adjudicator determines that an opinion from such a source is entitled to greater weight than a medical opinion from a treating source, the adjudicator must explain the reasons." The ALJ gave an explanation for according Cindy Thompson's opinion "some weight". He stated that "it is generally consistent with the medical record of evidence." (ECF 9-2 at 23.) Cindy Thompson's letter opined: that Plaintiff was unable to maintain a job or housing due to a drug and alcohol addiction; that Plaintiff self-medicates with drugs and alcohol to help treat his "underlying mental health issues"; that Plaintiff needed to address his mental health and addiction issues; and that Plaintiff had "a great deal of professional support" but was working to develop better peer support. (ECF 19-9 at 41.)

9

There is substantial evidence that Cindy Thompson's letter is consistent with the medical record. Plaintiff reported the following to a medical professional on November 18, 2010: "Was drinking half a gallon of vodka with 2 other people per day. Friends are providing him with alcohol and drugs." (ECF 9-20 at 36.) There is an indication in his medical records dated November to December 2010 that Plaintiff has been charged with public intoxication (*id.* at 51), was being treated for alcohol dependence and cocaine abuse (*id.* at 59), and had convictions for driving under the influence, being a minor in possession, and "possession/delivery" of a controlled substance (*id.*). Dr. Nease's treatment notes of December 1, 2010 indicate that Plaintiff has reported using alcohol and drugs since age 11, trying "about everything," including marijuana and crack. (*Id.* at 2.) Prior to seeing Dr. Nease, Plaintiff had also been homeless and had been in jail for battery of a police officer. (*Id.*) Plaintiff reported to Dr. Nease on January 19, 2011 that he remained sober and was living at his sister's house, which was "not an environment where drugs or alcohol are used." (*Id.* at 22.) There are numerous other references in the record to Plaintiff's several criminal convictions and to drug use by Plaintiff. Thus, there is ample evidence in the record to support Cindy Thompson's opinions with regard to the importance that Plaintiff's substance abuse played in his reported difficulties in maintaining a job and housing, as well as with regard to the importance that peer influences played in Plaintiff's substance abuse.

Thus, whether Cindy Thompson was a medical source or non-medical source who has seen the Plaintiff in her professional capacity, the ALJ made no error in assigning her opinion "some weight" even though the ALJ assigned the opinion of Plaintiff's treating psychiatrist, Dr. Nease, "no weight."

10

*B. Severe Impairment: Substantial Evidence*

Plaintiff's second argument is that the ALJ erred in finding that Plaintiff's mental disorders were not severe impairments. (ECF 20 at 1–2.) The ALJ found that Plaintiff had been prescribed the appropriate medications for his alleged impairments and that they had been relatively effective in controlling his symptoms. (ECF 9-2 at 20–21.) Plaintiff argues that the fact that Plaintiff's symptoms could be controlled with medications was not a proper basis for finding him not severely impaired, when non-compliance is a symptom of the disease. (ECF 20 at 2.) However, as discussed above, there is substantial evidence in the record supporting the determination that Plaintiff's symptoms improved as a result of medication. Further, as indicated above, there is no evidence of non-compliance as a symptom.

*V. CONCLUSION*

For the reasons stated herein, the Court **OVERRULES** Plaintiff's objections [ECF 20], **ADOPTS** the PF&R [ECF 19] to the extent it is consistent with this Memorandum Opinion and Order, **AFFIRMS** the final decision of the Commissioner, **DISMISSES** Plaintiff's Complaint [ECF 2], and **DIRECTS** the Clerk to remove this case from the Docket.

**IT IS SO ORDERED.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: September 30, 2014

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE